IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CRIMINAL ACTION NO. 21-281 |
| : | |
| ANTHONY DOUGLAS ELONIS : | |

## MEMORANDUM OPINION

Smith, J.                                                                                                                    March 25, 2022

A grand jury returned an indictment charging the defendant with three counts of cyberstalking. These charges relate to accusations that the defendant sent harassing communications to an Assistant United States Attorney, an ex-girlfriend, and an ex-wife.

The defendant has filed a motion and supplemental motion asking the court to dismiss the indictment. He argues (1) the alleged communications to the Assistant United States Attorney are protected speech, (2) the indictment fails to sufficiently charge an offense because the factual allegations are insufficient for a rational factfinder to conclude beyond a reasonable doubt that any victim actually suffered substantial emotional distress, and (3) the specific portion of the cyberstalking statute the government charges him with violating is unconstitutionally overbroad. For the reasons discussed below, the court will deny the motion to dismiss the indictment and its supplement.

### I.   PROCEDURAL HISTORY

A grand jury issued an indictment on July 21, 2021, charging the defendant, Anthony Douglas Elonis ("Elonis"), with three counts of cyberstalking, in violation of 18 U.S.C. § 2261A(2)(B). Doc. No. 1. His three victims include an Assistant United States Attorney in the Eastern District of Pennsylvania, an ex-girlfriend, and an ex-wife. *See id.*

On January 12, 2022, Elonis filed the instant motion to dismiss the indictment. Doc. No. 23. He argues (1) the communications he made to Assistant United States Attorney are "protected speech" and (2) the indictment fails to sufficiently charge an offense. Def.'s Mot. to Dismiss the Indictment ("Def.'s Mot.") at ECF p. 1, Doc. No. 23. Elonis supplemented that motion on January 25, 2022, asserting the cyberstalking statute, 18 U.S.C. § 2261A(2)(B), is unconstitutionally "overbroad." Def.'s Supplemental Pre-Trial Mot. ("Def.'s Suppl.") at ECF p. 1, Doc. No. 26. On February 22, 2022, the government filed a response in opposition to Elonis's motion to dismiss the indictment and his supplement to that motion (together, the "motions"). Doc. No. 33. The court conducted a hearing on the motions on March 9, 2022. The motions are now ripe for disposition.

## II.     SUMMARY OF THE INDICTMENT

### A.     Federal Cyberstalking Statute

The indictment charges Elonis with three counts of cyberstalking, in violation of 18 U.S.C. § 2261A(2)(B). *See* Indictment, Doc. No. 1. The relevant text of the statute reads:

> Whoever—
>
> (2) with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, uses the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that—
>
> . . .
>
> (B) causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person described in clause (i), (ii), or (iii) of paragraph (1)(A), shall be punished as provided in section 2261(b) of this title.

18 U.S.C. § 2261A(2)(B).

### B. <u>Victim #1</u>

Elonis's first victim ("Victim #1"), an Assistant United States Attorney in the Eastern District of Pennsylvania, was assigned in 2010 to investigate a series of threatening communications Elonis posted on Facebook. *See* Indictment at ¶¶ 1, 2. The investigation resulted in a grand jury indictment charging Elonis with five counts of making threatening communications, in violation of 18 U.S.C. § 875(c). *See id.* at ¶ 2. In October 2011, a jury convicted Elonis on four of the five counts; in September 2012, he received a 44-month term of imprisonment, to be followed by a three-year term of supervised release. *See id.* at ¶ 3.

While he was serving his prison sentence at FCI Fort Dix, he sent two letters to Victim #1. *See id.* at ¶¶ 5–6. His initial communication was a letter dated in March 2013, which referenced his approaching release date from prison and indicated that he planned to research municipal ordinances applicable to Victim #1's residence so he would not violate them when he "set fire to a cross in your yard." *Id.* at ¶ 5. His second communication was a letter dated in September 2013, which referenced Adam Lanza, the perpetrator of the Sandy Hook Elementary School shootings. *See id.* at ¶ 6.

Years later, starting in early January 2020, Elonis began e-mailing Victim #1 sexually explicit photos of himself and his ex-girlfriend, Victim #2. *See id.* at ¶¶ 8–10, 17. He bragged about doing so on his Twitter account, @anthonyelonis, writing, "It's one thing to joke about sending your dick pics to the prosecutor that tried your case. It's another thing entirely to actually do it. And, yeah, I did." *Id.* at ¶ 10. His tweet included a screenshot of the message he sent to Victim #1. *See id.*

Elonis continued to send e-mail correspondence to Victim #1 from January through early February 2020, and this correspondence repeatedly included excerpts of the posts for which he had

been prosecuted and convicted. *See id.* at ¶¶ 11, 12, 15. He continued to mention Adam Lanza in this correspondence, and he also referenced figures such as Charles Manson; the "Joker" character from the Batman movies; and the "Jigsaw" character from the Saw movies. *See id.* at ¶¶ 11–13, 15, 16, 20. In these communications, Elonis boasted that the threatening posts for which he had been charged and his subsequent prosecution by Victim #1 incited Adam Lanza to commit the Sandy Hook Elementary School shootings. *Id.* at ¶¶ 11–14. This culminated in an email to Victim #1 with a photograph depicting the young children killed in the shooting alongside the words "I TOOK PAYMENT IN BLOOD" in red. *Id.* at ¶ 14.[1]

### C.     Victims #2 and #3

Elonis's second victim was an ex-girlfriend, who dated Elonis from August 2015 until the summer of 2018. *See id.* at ¶ 22. They have one child together, over whom Victim #2 has full custody. *See id.* His third victim was an ex-wife, who separated from Elonis in May 2010 and obtained a divorce thereafter. *See id.* at ¶ 41. They have two children together. *See id.* The counts regarding Victim #2 and Victim #3 are styled similarly so the court, for the sake of brevity, will summarize them jointly.

The indictment sets forth conduct that included the posting of sexually explicit images and private intimate conversations of Victim #2, as well as numerous harassing communications to both victims. *See id.* at ¶¶ 22–55. These harassing communications included text messages, telephone calls, voicemails, stalking, and other such conduct that resulted in the obtaining of protection from abuse orders, violations of those orders, and findings of indirect criminal contempt. *See id.*

---

[1] In addition to this correspondence with Victim #1, Elonis posted tweets during the period between early April 2020 and December 2020, which referenced Victim #1. *See* Indictment at ¶¶ 17–21.

### III. DISCUSSION

In his motion to dismiss the indictment, Elonis argues (1) the communications he made to Victim #1 are "protected speech" and (2) the indictment fails to sufficiently charge an offense. Def.'s Mot. at ECF p. 1. His supplemental pre-trial motion hinges on the argument that the cyberstalking statute, 18 U.S.C. § 2261A(2)(B), violates the First Amendment because it is "overbroad." Def.'s Suppl. at ECF p. 1. Because these are distinct challenges with different substantive legal standards, the court will consider each in turn.

#### A. Protected Speech

First, the court must decide whether the speech alleged in the indictment is protected expression or rather, as the government argues, that Elonis's speech is unprotected because (1) as a threshold matter, he misconstrues the statute he is charged with violating and (2) his speech falls into an unprotected speech category. *See* Gov't's Resp. to Def.'s Pretrial Mot. to Dismiss the Indictment and Suppl. Pretrial Mot. ("Gov't's Resp.") at 3–29, Doc. No. 33.

Elonis asserts the court must dismiss the indictment because he did not convey a "true threat" to Victim #1 and therefore the First Amendment protects his speech. *See* Def.'s Mot. at ECF p. 10. The charged cyberstalking statute requires that "the defendant . . . with the intent to . . . harass or intimidate . . . another person . . . use a facility of interstate commerce . . . to engage in a course of conduct that . . . causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person . . . ." 18 U.S.C. § 2261A(2)(B). Nowhere does it require that a defendant make any threats. Furthermore, the Third Circuit has determined that this statute "is not targeted at speech or to conduct necessarily associated with speech, but with harassing and intimidating conduct that is unprotected by the First Amendment." *United States v. Gonzalez*, 905

F.3d 165, 190 n.10 (3d Cir. 2018). Thus, Elonis's argument that he did not convey a "true threat" to the first victim is immaterial.

The government goes on to argue that Elonis's alleged speech falls within an unprotected speech category. *See* Gov't's Resp. at 28–29. Categories of traditionally unprotected speech include "obscenity, defamation, fraud, incitement, and speech integral to criminal conduct." *United States v. Stevens*, 559 U.S. 460, 468 (2010) (internal citations omitted). These are "well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem." *Id.* (quoting *Chaplinsky v. New Hampshire,* 315 U.S. 568, 571–72 (1942)). Thus, "[s]pecific criminal acts are not protected speech even if speech is the means for their commission." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017).

The Third Circuit has clearly described when speech rises to the level of "speech integral to criminal conduct," finding in *Gonzalez* that the defendants' speech, which included internet postings and letters to the victim, fell well within this unprotected speech category:

> The defendants' speech served no legitimate purpose other than to harass and intimidate [the victim], conduct that is illegal under § 2261A. Thus, the speech was that which had a "sole and immediate purpose of continuing a violation of law." . . . . The evidence produced at trial sufficiently demonstrated that the defendants' conduct was part of a course of conduct targeted at [the victim], intended to cause her distress and obtain custody of her children. Thus . . . internet postings and letters sent to [the victim], the children, and third parties were actions that were integral to the course of conduct and the illegal purpose of the criminal cyberstalking conspiracy. As such, this conduct is not protected by the First Amendment.

905 F.3d at 193 (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 503 (1949)).

Here, Elonis has failed to establish the speech which forms the basis of the cyberstalking count involving Victim #1 is anything other than criminal harassment or intimidation, both of which are "illegal under § 2261A." *Id.* Elonis's alleged speech was integral to his criminal conduct

6

targeting Victim #1 and, as with the speech at issue in *Gonzalez*, it "served no legitimate purpose other than to harass and intimidate" Victim #1. *Id.* As such, Elonis's alleged speech falls squarely within the "speech integral to criminal conduct" exception and represents unprotected speech. Accordingly, the court rejects Elonis's argument that the court should dismiss the indictment because the speech he allegedly directed towards Victim #1 is protected.

### B.  Sufficiency of the Indictment

Next, the court will consider the indictment's sufficiency. Elonis argues the court should dismiss the indictment "because the [g]overnment failed to present sufficient evidence of the crimes at issue." Def.'s Mot. at ECF p. 10.

Regarding the contents of an indictment, it must "be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." Fed. R. Crim. P. 7(c)(1). An indictment need not have detailed allegations. *See United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007) ("While detailed allegations might well have been required under common-law pleading rules . . . they surely are not contemplated by Rule 7(c)(1)."). Instead, an indictment "is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). Generally, a court should construe an indictment as sufficient if it sets forth "the offense in the words of the statute itself." *Id.*; *see also United States v. John-Baptiste*, 747 F.3d 186, 196 (3d Cir. 2014) (concluding indictment was sufficient because it tracked the statutory language).

7

Here, the indictment sufficiently contains each element of the offense, informs Elonis of the charge against which he must defend, and tracks the language of the cyberstalking statute itself.² Therefore, the indictment is sufficient.

### C. Constitutionality of the Statute

Finally, the court examines the constitutionality of the cyberstalking statute because Elonis argues the statute is "unconstitutionally overbroad" in his supplemental pre-trial motion. Def.'s Suppl. at ECF p. 1.

The overbreadth doctrine prohibits the government from "banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 237 (2002) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)). Courts should employ the overbreadth doctrine "sparingly and only as a last resort." *Broadrick*, 413 U.S. at 613. More specifically, a court should invalidate a statute as unconstitutionally overbroad only if (1) "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep," *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008) (citation and internal quotation marks omitted), and (2) "if no reasonable limiting construction is available that would render the policy constitutional." *Sypniewski v. Warren Hills Reg'l Bd. of Educ.,* 307 F.3d 243, 258 (3d Cir. 2002)

---

² Each count sets forth several paragraphs containing background information and factual allegations. The indictment concludes each count with a statutory allegation. Because the counts follow a similar style, the court only provides count one for reference:

> From on or about January 5, 2020, and continuing through December 2020, in the Eastern District of Pennsylvania and elsewhere, the defendant, ANTHONY DOUGLAS ELONIS, did knowingly and intentionally, with the intent to harass and intimidate another person, use an interactive computer service, an electronic communication service, an electronic communication system of interstate commerce, and other facilities of interstate and foreign commerce to engage in a course of conduct that caused, attempted to cause and would be reasonably expected to cause substantial emotional distress to a person, that is, Victim #1. All in violation of Title 18, United States Code, Sections 2261A(2)(B).

Indictment at 14–15.

(citation omitted). The burden to establish the overbreadth of a statute rests on the party challenging it. *See Virginia v. Hicks,* 539 U.S. 113, 122 (2003).

The cyberstalking statute is not overbroad. *See Gonzalez*, 905 F.3d at 191 n.10 ("Section 2261A is neither overbroad nor unconstitutionally vague."). It is "not targeted at speech or to conduct necessarily associated with speech, but with harassing and intimidating conduct that is unprotected by the First Amendment." *Id.* Consequently, "because 'a substantial number of the statute's applications' are not unconstitutional, it is not overbroad." *Id.* (quoting *Wash. State Grange*, 552 U.S. at 449 n.6). Every other Circuit to consider similar overbreadth challenges to the cyberstalking statute has reached the same conclusion, namely, that the statute is not overbroad. *See United States v. Conlan*, 786 F.3d 380, 385–86 (5th Cir. 2015); *United States v. Osinger*, 753 F.3d 939, 944–45 (9th Cir. 2014); *United States v. Sayer*, 748 F.3d 425, 436 (1st Cir. 2014); *United States v. Petrovic*, 701 F.3d 849, 854–56 (8th Cir. 2012); *United States v. Shrader*, 675 F.3d 300, 310 (4th Cir. 2012); *United States v. Bowker*, 372 F.3d 365, 379–83 (6th Cir. 2004). Elonis has not provided any authority to the contrary. As such, he has failed to establish that the cyberstalking statute is unconstitutionally overbroad.

## IV.     CONCLUSION

As explained above, Elonis has not demonstrated that the court should dismiss the indictment: (1) the communications he made to Victim #1 are not "protected speech;" (2) the indictment sufficiently charges an offense; and (3) the cyberstalking statute, 18 U.S.C. § 2261A(2)(B), is not unconstitutionally overbroad. Accordingly, the court denies Elonis's motion to dismiss the indictment and his supplement to that motion.

The court will enter a separate order.

                                        BY THE COURT:


                                        /s/ *Edward G. Smith*
                                        EDWARD G. SMITH, J.

10