UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :
     :
     -vs-      :      Criminal No. 21-281-EGS-1
     :
ANTHONY DOUGLAS ELONIS,      :
     Defendant      :

## GOVERNMENT'S MEMORANDUM OF LAW REGARDING ITS OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT (PSR)

The government respectfully files the following objections to the final version of the PSR in the above-captioned matter. More specifically, the government objects to Paragraphs 60, 69, 75 and 81 of the PSR. The government asserts that a two-level obstruction-of-justice enhancement, pursuant to U.S.S.G. § 3C1.1, applies to *each* count of conviction in the present mater.

U.S.S.G. § 3C1.1, the guideline for Obstructing or Impeding the Administration of Justice, provides in pertinent part:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

Application Notes 4(B) and (F) of § 3C1.1 indicate that an obstruction enhancement is warranted for "committing, suborning, or attempting to suborn perjury" and for "providing materially false information to a judge or magistrate judge."

1

It is well-established that "a defendant's right to testify does not include a right to commit perjury." *United States v. Dunnigan*, 507 U.S. 87, 96 (1993).  A defendant qualifies for the perjury enhancement when he gives "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." *Id.* at 94.

The so-called "perjury adjustment" has been applied under many different types of circumstances, including cases where a defendant:

- gave false testimony at trial (*See United States v. Williamson*, 154 F.3d 504 (3d Cir. 1998) (defendant committed perjury at trial);

- "shaded the truth" (*See United States v. Jackson*, 787 F.3d 1153 (7th Cir. 2015) (affirming where judge found that defendant "shaded the truth");

- where the defendant's testimony was irreconcilable with the jury's verdict (*See United States v. Johnson*, 302 F.3d 139 (3d Cir. 2002) (affirming where defendant's testimony at trial was ***"irreconcilably inconsistent with the jury's verdict")*** (emphasis added); *United States v. McDonald*, 826 F.3d1066 (8th Cir. 2016) (defendant's testimony must necessarily have been rejected at least in part by the jury);

- constituted perjury (*See United States v. Stenson,* 741 F.3d 827 (7th Cir. 2014) (defendant's testimony was incredible in light of other evidence);

- was more than a mere denial of guilt (*See United States v. Washington*, 702 F.3d 886 (6th Cir. 2012) (defendant's false testimony was not a simple "refusal to admit guilt"); *United States v. Armstrong*, 620 F.3d 1172 (9th Cir. 2010) (defendant's testimony was ***material***, not just a mere denial of guilt);

- ***where defendant perjured himself in explaining his threats to witnesses***. (*See United States v. Mabie,* 663 F.3d 332 (8th Cir. 2011) (***defendant falsely testified regarding his motives for making threatening communications and claimed he did not intend the communications as threats)***. The *Mabie* Court found there was ample proof that the defendant made his communications ***"for reasons other than he declared at trial,"*** and upheld an obstruction-of-justice enhancement on ***each*** of the four counts of interstate communication of threats for which Mabie had been convicted);

- where defendant gave false testimony regarding his **intent** (*See United States v. Stulock,* 308 F.3d 922 (8th Cir. 2002) (affirming increase based on defendant's perjury at trial about his lack of *intent* to receive child pornography);

- where defendant gave false testimony regarding his knowledge (*See United States v. Walker,* 688 F. 3d 416 (8th Cir. 2012) (defendant gave false testimony about his knowledge of co-conspirator).

In *United States v. Gray,* 942 F.3d 627 (3d Cir. 2019), a possession-of-a-firearm case, the Third Circuit concluded that Gray had committed perjury when he repeatedly testified that he did not possess a firearm. *Id.* at 633. The Court determined that the elements of falsity and materiality were implicit in the jury's guilty verdict for possession of a firearm. "Obviously, the jury could not have convicted Gray of possession of a firearm without finding that he had *in fact* possessed a firearm." *Id.* Thus, if the jury had believed Gray's testimony that he did not possess a firearm, the jury would not have *convicted* him of unlawful possession of a firearm. "As such, there can be no question that the relevant findings with respect to the falsity and materiality of Gray's testimony were necessarily made by the jury." *Id. See United States v. Boggi,* 74 F.3d 470, 479 (3d Cir. 1996) (concluding the defendant's trial testimony was false and "necessarily material" because the jury would not have convicted him if the jury had believed his testimony).

The *Gray* Court thus upheld a two-level enhancement for obstruction of justice.

Likewise, in *United States v. Johnson*, 302 F.3d 139 (3d Cir. 2002), the defendant testified that the coat he was wearing when he was arrested, which was

later found to contain crack cocaine, and a "drug-laden bag" found at the residence where he was staying, did not belong to him. *Id.* at 153. A cooperating witness testified to the contrary. *Id.* The Third Circuit held that, by virtue of its verdict, the jury credited the cooperating witness and rejected the defendant's testimony. Moreover, the sentencing court was bound by the factual determinations implicit in the jury's verdict. *Id.* Accordingly, '[b]ecause several portions of [the defendant's] sworn testimony at trial were *irreconcilably inconsistent* with the jury's verdict," the Third Circuit found that the district court did not err by imposing the § 3C1.1 enhancement. *Id.* at 154. (emphasis added).

In a case more like the facts of the present Elonis matter, *United States v. Floyd*, 458 F.3d 844 (8th Cir. 2006), the defendant sent copies of an article about the murder of a federal judge's family to a lawyer, two judges, and the district judge in Iowa who was connected to various litigation previously involving the defendant's family. On the article, the defendant wrote the words "Be Aware Be Fair." *Id.* at 846. The defendant admitted to sending the letters, but at trial *denied* that the letters were meant to threaten or intimidate the recipients.

The defendant was convicted of making threats under 18 U.S.C. Section 876 (c).

The district court found that the obstruction enhancement applied because the defendant had perjured herself when she stated that she sent the communication for a reason *other than to threaten* the recipients. The district court found that the defendant's statements were perjured statements, about a

4

material issue, and not as a result of confusion, mistake, or faulty memory. *Id.* at 850.  Accordingly, the Eight Circuit affirmed the obstruction enhancement.

Similarly, in *United States v. Mabie,* 663 F.3d 322 (8th Cir 2011), the defendant was charged with three counts of mailing threatening communications, 18 U.S.C. Section 876 (c), and one count of interstate communications of threats, 18 U.S.C. Section 875 (c).  At trial, Mabie took the stand in his defense and testified that he did not intend to harm anyone. He testified that the four communications he sent were *not intended* as threats.  *Id.* at 334.  Rather, he claimed that the communications were made for some legitimate reason.

The defendant was convicted of all four counts.

The district court determined that Mabie testified falsely regarding his motives for making the threatening communications and assessed a two-level enhancement for obstruction of justice.

On appeal, the Eighth Circuit affirmed the obstruction enhancement on *each* of the four counts, finding "ample proof that Mabie made his communications for reasons other than those he declared at trial."  *Id.* at 334-335.

In the present matter, during his testimony, Elonis, in methodical fashion, recited many of the communications set forth in the indictment – particularly those aimed at Victim #1, #2, and #3 – and, contrary to the overwhelming weight of the evidence, repeatedly denied that his communications were intended as threats or communicated with the intent to place his victims in fear of injury or death.[1]  (*See*

---

[1] *See* PSR ¶¶ 54, 176: "Elonis used the internet, Twitter, emails phone calls and

N.T. Day 4).

(*See, e.g.,* p. 149 (Regarding an email containing sexually explicit images sent to Victim #1) Q: Did you have any intent to communicate a threat . . . ?  A: No. (Elonis then went on to explain that the email was "an ill-advised way" of announcing his "support" for a recent Texas statute that prohibited the unsolicited sending of sexually explicit photographs.)

(p. 151 (Regarding another communication sent to Victim #1) Q: "Was it your intent to communicate a threat of death or bodily injury?"  A: "No, it was not.")

(p. 153 (Regarding the email "Hell Hath No Fury Like a Crazy Man in a Kindergarten Class . . . The Only Question is Which One," containing a picture of the "Joker" character and Adam Lanza, sent to Victim #1) "It was not my intent to communicate a threat.")

(p. 156: "It was not my intent to threaten [Victim #1].")

(p. 157: Q: "Did you intend, in that statement, to threaten [Victim #1] with death or bodily injury?"  A: "No.")

(p. 157: Q: "Was that sent to communicate . . . a threat?" A: "No.")

(p. 169:  Q: "Did you intend to communicate a threat of death or bodily injury?" A: "No, there were no threats of any kind.")

(p. 171: "There were no threats of bodily injury" (regarding Victim #2)).

---

voicemails to place his victims in fear – fear that he would hurt them or injure them or worse. He *intended* many of his communications as *threats* and certainly *knew* that the communications *would be taken as threats* by his female victims, each of whom he was angry with and bore a grudge against."

Further, the defendant was asked about some of the "tweets" he posted on Twitter:

P. 176:  Q: "Was it your intent that either Victim #1, #2, or #3 see them?"  A: "No."

Elonis provided these responses knowing full-well that his "tweets" were observed on Twitter by his victims, who were his intended audience.  In a voicemail to Victim #3, Elonis indicated that he *knew* that Victim #3 and Victim #2 were reading his Twitter posts (*See* Gov't Ex # 3.30: *"I'm not stupid, I know you read my shit, I know [name of another ex-girlfriend] reads my shit, I know [Victim #2 reads my shit . . .")*. And in a separate voicemail, he even apologized to Victim #3 for the things he posted about her on Twitter. (Gov't Ex. # 3.31: *". . . I deleted my Twitter, um, basically indefensible, I'm sorry for all the awful things I said on there, especially the stuff about you . . ."*).

Elonis further testified that many of his postings on Twitter were not meant to threaten or scare anyone but, rather, were meant for his "First Amendment followers" and the "First Amendment community."

(*See, e.g.,* p. 149: "I was writing to law professors, to - - to my audience on Twitter")

(p. 179: A: "I mean, my audience consisted of law professors, law students . . . [Victim #1, #2, and #3] were not part of the audience." Q: "So when you posted either tweets or Facebook posts . . . your testimony was your intended target was the First Amendment community"? A: "Correct.")

The defendant's testimony and explanations were *"irreconcilably inconsistent with the jury's verdict." Johnson, Mabie, Stulock, supra.* Further, his testimony was clearly false and deceptive, in light of the evidence presented.

This Court instructed the jury that a key element of the offense of cyberstalking was the defendant's "intent:"

(*See, e.g.,* Day 4, p. 160: "I instruct you on one particular issue, and that has to do with the *intent* that's necessary in order to be found guilty of the offense of cyberstalking. And that intent - - when you hear the words intimidate, harass and intimidate, the "intimidate" is interpreted narrowly, to mean that the Defendant intended to make his victim fear death or bodily injury. It doesn't mean that he had to intend to commit the act or to commit any act of violence, but he had to intend -- by his course of conduct, he had to intend to make his victim fear death or bodily injury. And in general terms, to intimidate, the Defendant must put the victim in fear of death or bodily injury.

To harass, it has to be criminal harassment, which means the Defendant must distress the victim by threatening or intimidating . . . Again, this theory being the Defendant had to have intended to make his victim fear death or bodily injury."

As in *Floyd* and *Mabie*, *supra.,* Elonis testified falsely as to both his *motive* and *intent* in making or sending the threatening communications to Victim #1, #2, and #3.

As the Third Circuit has held when considering a challenge to this sentencing enhancement, "a guilty verdict, not set aside, binds the sentencing court to accept the facts necessarily implicit in the verdict." *United States v. Gray*, 942 F.3d 627, 633 (3d Cir. 2019) (*quoting United States v. Boggi*, 74 F.3d 470, 478-79 (3d Cir. 1996).

As in *Gray* and *Johnson*, *supra.,* had the jury believed the defendant's testimony – in this case, that he did not *intend* to threaten his victims or did not

*intend* to place his victims in fear of bodily injury or death – or that his postings were only meant for the "First Amendment community" – the jury would not have found him guilty. The defendant's testimony was thus *"irreconcilably inconsistent with the jury's verdict." Johnson, supra.* Moreover, the elements of falsity and materiality of the defendant's testimony are *"necessarily implicit in the verdict." Gray, Boggi, supra.*

The defendant's testimony thus included perjured statements, about a material issue, that were not the result of mistake, confusion or faulty memory. *Floyd, Mabie, supra.*

Elonis also made additional statements in his sworn testimony which constituted perjury. Just as an example, Victim #3 related that Elonis would often show up at her house, unannounced and uninvited, and knock on her door and/or ring her doorbell. She told Elonis not to come to her house. Yet Elonis testified on direct examination that Victim #3 *never* told him not to come to her house, a statement which was totally false.

The Supreme Court has held that the "perjury adjustment" is *mandatory* where a defendant commits perjury at trial. *See Dunnigan supra. See also*, *United States v. Williamson*, 154 F.3d 504 (3d Cir. 1998) (collecting cases reiterating that the obstruction of justice enhancement is mandatory once the sentencing court has determined that the factual predicates are met). Before imposing the perjury adjustment, however, the district court must make independent findings that the defendant willfully attempted to obstruct justice. *See United States v. Napolitan*,

762 F.3d 297 (3d Cir. 2014) (reversing for inadequate findings).  The court must find that the misrepresentations were willful, material to the investigation or prosecution, and made with specific intent to obstruct justice, rather than as a result of confusion, mistake or faulty memory.  The *Dunnigan* findings can be implicit as long as they encompass all of the required elements of perjury.  *See United States v. Gricco*, 277 F.3d 339 (3d Cir. 2002) (upholding increase where findings were implicit in the record).

Separate findings of fact regarding each element of perjury are not strictly necessary as long as the district court finds that the defendant lied to the judge and jury about matters crucial to the question of the defendant's guilt.  *See United States v. Ellis,* 548 F.3d 539 (7th Cir. 2008).

Based on the above, the government respectfully asserts that a two-level obstruction-of-justice enhancement, pursuant to U.S.S.G. § 3C1.1, applies to *each* count of conviction in the present mater.

Respectfully submitted,

GERARD M. KARAM
United States Attorney
Middle District of Pennsylvania


By: s/Robert J. O'Hara
Robert J. O'Hara
Special Assistant U.S. Attorney
Acting Under Authority
Conferred by 28 U.S.C. § 515

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the

United States Attorney for the Middle District of Pennsylvania and is a person of

such age and discretion as to be competent to serve papers.

That on March 20, 2023, she served a copy of the attached:

## GOVERNMENT'S MEMORANDUM OF LAW REGARDING ITS OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT (PSR)

By ECF:

Attorney Edson Bostick
Counsel for Defendant

/s/ Luann Manning
Supervisory Legal Assistant