UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal Action No. 21-281 |
| : | |
| ANTHONY ELONIS, : | |
|       Defendant : | |

SUPPLEMENTAL BRIEF IN OPPOSITION
TO ELONIS'S MOTION FOR SENTENCE REDUCTION

COMES NOW, the United States of America, by Brian D. Miller, United States Attorney for the Middle District of Pennsylvania, and Geoffrey W. MacArthur, Assistant United States Attorney specially designated by the United States Attorney General to investigate and prosecute this matter in the Eastern District of Pennsylvania, who oppose defendant Anthony Elonis's motion for a sentence reduction pursuant to Amendment 821. The United States previously opposed Elonis's motion for a sentence reduction. Doc. 122. The United States submits the following Supplemental Brief in Opposition in advance of a hearing on this matter to be held on March 11, 2026. Doc. 134.

I.   FACTUAL SUMMARY AND PROCEDURAL HISTORY

A.   Factual Summary

A summary of the facts underlying both Elonis's 2011 conviction and his 2022 conviction were included in the Brief in Opposition filed on June 9, 2025.  Doc. 122.

Additionally, the following information is submitted to supplement the factual record:

Judge Edward G. Smith presided over the trial of this matter in August 2022 and sentenced Elonis on March 23, 2023. Doc. 108.  On November 27, 2023, Judge Smith passed away.  One year later, on November 27, 2024, the lead government attorney (AUSA Robert O'Hara) received a voicemail message on his direct office line from Elonis.  The message was brief and in it Elonis said:

> *"Hello Mr. O'Hara, this is your old friend Anthony Elonis.  Uh, I'm going to keep it brief, today marks the one-year anniversary of the tragic and untimely death of Judge Smith.   I'm suggesting that you buy the widow some flowers.  Ok, we'll keep it there, brief.  The future is bright.  A lot of good things are in store for the future, Mr. O'Hara.  Have a wonderful day.  Bye."*

No action was taken against Elonis as a result of this message.  A copy of the voicemail on electronic media will be supplied to the Court as Exhibit A.

B. <u>Procedural History</u>

Anthony Elonis was convicted by a jury on August 5, 2022, on three counts of Cyberstalking. Doc. 65. The Probation Office calculated his advisory guideline range to be 121-151 months. PSR Par. 158. On March 23, 2023, Elonis was sentenced to 151 months of imprisonment. Doc. 102. A transcript of the sentencing proceeding was prepared and is attached as Exhibit B, Doc. 108. Elonis's conviction was affirmed by the Third Circuit on May 15, 2024. Doc. 115.

On May 16, 2025, Elonis filed a motion for a sentence reduction based on Amendment 821 to the Sentencing Guidelines. Doc. 118. The United States opposed Elonis's motion. Doc. 122. This Court denied Elonis's motion for a sentence reduction. Doc. 127, 128.

Elonis appealed the denial of his motion for a sentence reduction. 25-2447. The United States moved for summary affirmance of this Court's order. Elonis cross-moved for summary reversal of this Court's order. On November 20, 2025, the Third Circuit denied the motion for summary affirmance, granted Elonis's cross-motion for summary action and remanded the matter to this Court for further proceedings. Doc. 19-1, 25-2447.

On December 19, 2025, this Court ordered an evidentiary hearing in this matter for March 11, 2026 and invited memoranda to be filed 7 days prior. Doc. 134. The United States now responds with this supplement to its prior briefing filed at Doc. 122.

## II.  ARGUMENT

A.  **Even if the letter to Victim #3 did not violate a court order, the behavior demonstrates that Elonis continues to be undeterred, has little respect for the law, and continues to require rehabilitation.**

Anthony Elonis sent a letter on May 20, 2025, that was addressed to "The Elonis Family". See Exhibit A filed under Doc. 122. The letter read "I love you." Id. The United States anticipates that Elonis may claim that the letter was intended for his daughter or children and not his ex-wife ("Victim #3" in the 2022 conviction). In addition to this factual defense, the United States anticipates that Elonis will assert that as a matter of law, a district court does not have the jurisdiction to enter a no-contact order as condition of incarceration. *United States v. Santos Diaz*, 66 F.4th 435 (3rd Cir. 2023). As such, the prohibition against contacting his ex-wife was not yet effective when he wrote the

letter and Elonis will argue that he has not violated the terms of Judge Smith's sentence.

The United States urges this Court to view the letter to "The Elonis Family" not through the lens of whether it is permissible, but rather to view this behavior for what it is: ongoing and unwanted contact with a person that has not stopped for 15 years. Victim #3 has had a Pennsylvania Protection From Abuse order lodged against Elonis, has divorced him, and has twice now been victimized by threats from Elonis for which he has been convicted in federal court. Elonis has served time in prison for communicating threatening words to his ex-wife. Yet his behavior shows that far from being remorseful, he is undeterred from continuing to push the envelope with his actions.

At the sentencing hearing on Elonis's present case, Judge Smith specifically admonished Elonis that he was "prohibited from having contact with the victims of the offense." Doc. 108, p. 62, line 15-22. Near the conclusion of the sentencing hearing, AUSA O'Hara moved to expand the no-contact condition to preclude contact with "any Government witness." Id. p. 66, line 14-24. The Court granted AUSA O'Hara's request with no objection from the defense. Id. p. 67.

The United States agrees that the no-contact condition only applies to Elonis's term of supervised release. But even if Elonis has not violated a court order, he must certainly be aware – through PFAs, a divorce, and two federal prosecutions and terms of imprisonment – that his contact with his ex-wife is not welcome. Moreover, if Elonis listened to Judge Smith's words at sentencing and understood his sentence the way he now claims (that the no-contact order is not effective until his term of supervised release), it is troubling that he would use the opportunity in the meantime to engage in contact that, if not prohibited, is clearly unwelcome.

Nor does it ring true that Elonis intended the letter solely for his children (whose ages are approximately 21 and 23 at present). Neither the letter nor the envelope are addressed to either of the children. And the content of the letter – "I love you" – is similar to much of the harassing contact for which Elonis was convicted in the present case. (See, PSR Par. 47 and 48, relating to unwanted and unsolicited notes, gifts and letters to Victim #3 and messages of "I love you" on her voicemail). Rather, the letter to "The Elonis Family" is yet another effort by Elonis that is consistent with his pattern of engaging in speech

that he views as lawful but that "somehow skirts criminal liability" as noted by Judge Smith when he imposed sentence. Exhibit B, page 55, line 21.

Even if the letter to "The Elonis Family" is not a violation of this Court's sentencing order, it should still be considered as a factor under §3553(a) when deciding whether a sentence reduction is appropriate. This letter does not show a contrite, remorseful individual who is seeking to make amends for his criminal conduct. Instead, it shows a person who has little respect for the law. That is, Elonis believes (rightly or wrongly) that he knows where the line is, and instead of ensuring that his conduct stays well within this line, he instead tests the limit of this boundary. Through his behavior (and not the words themselves) he has shown that he is not deterred from future criminal conduct. This Court should recognize the ongoing need for rehabilitation that is consistent with the sentence originally imposed and deny Elonis's motion for a sentence reduction.

B. **Elonis continues to show the same pattern of veiled threats through ostensibly lawful speech that ultimately has the effect of putting his victims in fear.**

Anthony Elonis went to prison for 44 months in 2011 for making threats against others, including his ex-wife. Elonis appealed issues of law related to jury instructions in that case and the matter was ultimately heard by the United States Supreme Court. Judge Smith noted that as a result, Elonis became well-known in the area of First Amendment jurisprudence. Exhibit B, Doc. 108, Sentencing Transcript, p. 54, line 20-25. Judge Smith further observed that Elonis "tried to use your newfound research and your newfound intelligence – for lack of a better word – to now try to use this to skirt the bounds of the law – let me do this because I think I can skirt the bounds of the law." Id. p. 55, line 2-8. Judge Smith characterized Elonis's actions towards his victims as wanting to "put them in fear, but you wanted to do it in a way that somehow you could skirt the liability for it … you wanted to accomplish your criminal objectives in a way that would somehow skirt criminal liability." Id, line 16-21.

Here, Elonis continues to push the boundaries of appropriate behavior. Regardless of whether the words left on AUSA O'Hara's voicemail are themselves protected speech, the subtext and the circumstances surrounding the voicemail are chilling, to say the least.

There is no good reason to call a prosecutor on the anniversary of a Judge's death. The voicemail to AUSA O'Hara cannot be interpreted either as a genuine request for O'Hara to send flowers or as a sincere hope for the brightness of O'Hara's future. There is no good reason for Elonis to suggest that AUSA O'Hara buy flowers for Judge Smith's widow. Even if the vague reference to AUSA O'Hara's future is not menacing, there is no need for it. The reason Elonis left the voicemail is not because he had a sincere need to do so but because through his behavior he wished to unnerve or at least disturb AUSA O'Hara.

This is particularly true given Elonis's history. Elonis made criminal threats against the prosecutor in his original case, Victim #1. The emails to his prior prosecutor were – like here – couched by Elonis as lawful and benign. They began – like here – when Elonis was still in custody. The fact that the contact with his prior prosecutor ultimately ripened into Count 1 of the present indictment is a good indication to this Court that Elonis is not deterred and that he does not, as he wrote to AUSA Victim #1 have "a newfound respect for the law." PSR Par. 10. At a minimum the message to AUSA O'Hara (independently of the

words themselves) conveys the menacing implication that Elonis knows how to find AUSA O'Hara.

Indeed, at Elonis's sentencing, Judge Smith presciently observed that "I mean, if I were Assistant United States Attorney O'Hara, who I'm sure has no fear of you, I wouldn't be surprised if he's saying, I wonder if I'm going to get a letter and that you're going to try to do it in some way that – maybe I'll get a letter. I don't know. This is just your pattern. This is just your pattern." Doc. 108, p. 56, line 6-11.

The First Amendment does not preclude this Court from considering Elonis's voicemail to AUSA O'Hara (or his letter to "The Elonis Family") when evaluating Elonis's motion for a sentence reduction. The Court is *required* to consider a defendant's history and characteristics when imposing a sentence. *United States v. Rose*, 2023 WL 2570561 (3rd Cir. 2023). A reliable indicator of the characteristics of a person is what they say. *United States v. Stewart*, 686 F.3d 156, 166 (2nd Cir. 2012) ("[A] person's history and personal characteristics can often be assessed by a sentencing court only or principally through analysis of what the person has said – in public, in private, or before the court."). Consideration of §3553(a)'s "broad constellation of factors" does

not violate a defendant's right to speak under the First Amendment. *Stewart* at 167.

To be clear, it is not the content of either the letter to Victim #3 or the voicemail to AUSA O'Hara that should enter into the Court's sentencing consideration. *United States v. Lemon*, 723 F.2d 922 at 937 (D.C. Cir. 1983) ("a court may not punish an individual by imposing a heavier sentence for the exercise of first amendment rights."). Rather it is the lack of remorse and the ongoing need for rehabilitation that are implicated. *United States v. Bangert*, 645 F.2d 1297 (8th Cir. 1981); *United States v. Kane*, 452 F.3d 140 at 143 (2nd Cir. 2006) ("[B]ecause much of Kane's writings concerned illegal real estate schemes, which related directly to his offense of conviction, the writings also may indicate the increased likelihood of recidivism or a lack of recognition of the gravity of the wrong.")

The voicemail should be viewed in the context of Elonis's prior behavior, which includes threatening and unwanted contact with the prosecutor on his first case. Elonis's ongoing and unnecessary contacts with now a second prosecutor (O'Hara) and a woman he has twice been convicted of victimizing in the past (Victim #3) show that he is

undeterred from continuing to push the envelope and engaging in a pattern that "skirts criminal liability." His motion for a sentence reduction should therefore be denied.

### C. The 151-month sentence imposed remains "the lowest sentence sufficient to satisfy the purposes of sentencing."

The 151-month sentence imposed by Judge Smith was not simply a sentence at the upper end of the guideline range. Judge Smith thoroughly analyzed all of the §3553(a) factors and arrived at the conclusion that the 151-month sentence is "the only sentence that is correct" and that it was "the lowest sentence sufficient to satisfy the purposes of sentencing." Doc. 108, p. 63, line 19-23.

The Sentencing Guidelines are merely advisory and a Court must make an individualized assessment of the §3553(a) factors when imposing a sentence. *United States v. Tomko*, 562 F.3d 558 (3rd Cir. 2009). Here, Judge Smith conducted just such an analysis. Doc. 108. He arrived at 151 months as "the only sentence that is correct". Id. Nothing that has transpired in the interim should suggest to this Court that a reduction is appropriate under Amendment 821. Instead, Elonis is engaging in the same pattern of behavior that he has engaged in for

15 years, "skirt[ing] criminal liability" and continuing to place his victims in distress, if not outright fear. His behavior, if not his words themselves, shows that he is not a contrite and rehabilitated defendant who wishes to stay clear of the law. If Anthony Elonis wishes to continue to test the boundaries of what constitutes appropriate behavior, he should do so within the confines of his original sentence. No reduction is warranted.

## III. CONCLUSION

For the foregoing reasons the United States respectfully requests the Court to deny Elonis's motion for a sentence reduction under Amendment 821.

Respectfully submitted,

BRIAN D. MILLER
United States Attorney

 s/Geoffrey W. MacArthur
GEOFFREY W. MacARTHUR
Special Assistant U.S. Attorney
Acting Under Authority
Conferred by 28 U.S.C. § 515

Date: March 3, 2026

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Criminal Action No. 21-281 |
| | : |
| ANTHONY ELONIS, | : |
|       Defendant | : |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this Tuesday, March 3, 2026, he served a true and correct copy of the foregoing

### SUPPLEMENTAL BRIEF IN OPPOSITION TO ELONIS'S MOTION FOR SENTENCE REDUCTION

via electronic means to the address below:

Nancy MacEoin, Esq. via ECF

   s/Geoffrey W. MacArthur
GEOFFREY W. MacARTHUR
Assistant United States Attorney